# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ROBERT THOMAS, | : | |
| Plaintiff, | : | |
| | | Case No. 3:10cv00099 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| MICHAEL J. ASTRUC, Commissioner of the Social Security Administration, | : | Magistrate Judge Sharon L. Ovington |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Robert Thomas applied for Disability Insurance Benefits and Supplemental Security Income asserting that certain physical and mental health problems precluded him from gainful employment. He was unable to convince the Social Security Administration that he is under a benefits-qualifying disability, and as a result, his applications have been administratively denied. The administrative proceedings included two hearing before Administrative Law Judge Thaddeas J. Armstead Sr. (Tr. 609-711). And the final denial of Plaintiff's DIB and SSI applications occurred in the written decision issued by Administrative Law Judge Armstead. (Tr. 16-27).

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff brings the present case pro se challenging the Administrative Law Judge's decision. Plaintiff seeks an Order reversing that decision and remanding to the Social Security Administration either for payment of DIB and SSI or for additional administrative proceedings. The Commissioner seeks an Order affirming the Administrative Law Judge's decision.

This Court has subject matter jurisdiction over the parties' dispute. *See* 42 U.S.C. §§405(g), 1383(c)(3).

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), the administrative record, and the record as a whole.

## II.    **Background**

Plaintiff attended school to either the 7th or the 11th grade. *See* Tr. 25. This is a limited education under Social Security Regulations. *See* 20 C.F.R. §§404.1564(b)(3); 416.964(b)(3).[2]

On the date of the Administrative Law Judge's decision in June 2009, Plaintiff was over age 55 and thus considered to be a person "of advanced age" under Social Security Regulations. 20 C.F.R. §404.1563(e). His age on the date his asserted disability began placed him in the category of a person "closely approaching advanced age" under the

---

[2] The remaining citations to the Regulations will identify only the pertinent DIB Regulations, with full knowledge of the corresponding SSI Regulations. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

Regulations. 20 C.F.R. §404.1563(d).

Plaintiff's work history includes housekeeping for a professional maintenance business (Tr. 109) and work as a dishwasher, a baker, a commercial cleaner, and a laundry worker. (Tr. 697-700). He last worked for a recycling company. (Tr. 620).

Plaintiff has multiple physical and mental impairments including gout in his feet. A medical expert, Dr. Metcalf, testified during the second administrative hearing that gout "is a form of migratory arthritis, affecting various joints, usually one at a time, sometimes two." (Tr. 681). Dr. Metcalf further testified, "And it flares up and it's treated ... in many cases there's no continuing disability...." (Tr. 682). Dr. Metcalf continued, "Some cases of gout, however, if it has been going on long enough can develop degenerative changes in one or other joints that can leave a continued problem...." *Id*.

Plaintiff testified that he was fired from his last job because he could not stand long enough to perform the job due to pain from gout in his feet and his feet "kept giving out." (Tr. 620-21). Plaintiff further testified that gout is the primary impairment that keeps him from working. (Tr. 621).[3] He noted that the gout can hit him at anytime. It affects his toes, knees, and his right hand. (Tr. 623). He experiences flare-ups every few weeks. The pain will last three to four days, and he spends the day in bed. (Tr. 630). He also has swelling with the flare-up. When his hand is swollen it makes it hard to use. (Tr.

---

[3] Plaintiff asserts that he also has problems with breathing, consistent with early emphysema or chronic obstructive pulmonary disease. (Doc. #8 at 46, n.2). He is positive for hepatitis C, but Dr. Metcalf characterized this as asymptomatic. (Tr. 691). He has been hospitalized for acute gout flare up and chest pain. (Tr. 356). Testing showed moderate concentric left ventricular hypertrophy. (Tr. 371).

631).

During the second administrative hearing, Plaintiff testified that he continued to have flare-ups of his gout; he had been out of medication for a few weeks because he could not afford them. (Tr. 673-74). He estimated that he could walk a few blocks before it became too much for him. Walking caused pain in his knee and right side of his foot. (Tr. 672, 674). Plaintiff estimated that he could stand for about 20-25 minutes. He could not lift very much weight, as indicated by his testimony that he sometimes has difficulty getting milk out of the refrigerator. (Tr. 672). Plaintiff Mr. Thomas testified he could sit "pretty good" but he had to stand up and walk around the house from time to time. (Tr. 673).

Plaintiff was diagnosed with HIV in 2002. (Tr. 272-73, 638). Dr. Boyce, another medical expert who testified during the administrative hearings, stated that Plaintiff's objective test results are not consistent with AIDS. (Tr. 638).

Both Dr. Boyce and Dr. Metcalf, who testified in November 2008 and April 2009 (respectively), opined that Plaintiff was capable of performing medium work.[4] (Tr. 646, 686).

In May 2006 Dr. Holbrook reviewed the record at the request of the Ohio Bureau of Disability Determinations. (Tr. 183-90). Dr. Holbrook opined that Plaintiff could lift and/or up to 20 pounds occasionally and 10 pounds frequently. (Tr. 184). He could stand

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...." 20 C.F.R. §404.1567(c).

4

and/or walk about 6 hours in an 8-hour workday. *Id*. He could sit about 6 hours in an 8-hour workday. *Id*.

Plaintiff also has mental health struggles. He sees a counselor about once a month and also sees a psychiatrist. (Tr. 628). He testified that depression causes him to have a "terrible attitude," and it is affecting his marriage. (Tr. 632).

In October 2006 a psychologist, Dr. Flexman, evaluated Plaintiff for the Ohio Bureau of Disability Determinations. (Tr. 191-95). Plaintiff reported to Dr. Flexman that his emotional state was "terrible." (Tr. 191). He noted that his temper was "irritable." *Id*. On examination his eye contact was fair at 60% of the time. (Tr. 192). Plaintiff characterized his mood as "a little shaky." *Id*. His attention span was fair and his concentration was poor, although Dr. Flexman rated the effort Plaintiff made was poor. *Id*. Dr. Flexman reported:

> Overt pain behavior was observed when standing and walking. Affect was embellished and negative during the evaluation and no lability was present. Attitude was within normal limits but agitated during the evaluation process.

(Tr. 192).

Dr. Flexman noted that Plaintiff "was not able to acknowledge that presence of psychological issues in his life. The claimant blamed other for his problems." (Tr. 193). According to Dr. Flexman, "The claimant did not have a realistic degree of recognition for the amount that his impairment had on his ability to function. Obsessive thinking concerning somatic or other psychological symptoms was judged to be out of proportion

5

with reality and somatization was present." (Tr. 193).

Dr. Flexman diagnosed a somatoform disorder not otherwise specified, depression not otherwise specified, and a personality disorder not otherwise specified. *Id*. Dr. Flexman opined that Plaintiff had a slight limitation in his ability to understand and carry out short, simple instructions and that he had a slight limitation on his ability to make judgments for simple work-related decisions. (Tr. 194). According to Dr. Flexman, Plaintiff had a slight limitation on his ability to concentrate or sustain attention. He thought that Plaintiff had moderate restrictions in his ability to relate to the public or coworkers. He opined that Plaintiff had a slight limitation on his ability to interact with supervisors. And Dr. Flexman believed that Plaintiff had moderate restrictions in his ability to respond to work pressures or changes in the work environment. (Tr. 194).

Psychologist Dr. Melvin reviewed the administrative record for the Ohio Bureau of Disability Determination in November 2006. (Tr. 199-216). Dr. Melvin concluded that Plaintiff could perform simple, repetitive tasks and could relate to others in a superficial capacity. (Tr. 201). Dr. Melvin opined that Plaintiff had a mild limitation on his ability to perform activities of daily living and mild degree of difficulty in maintaining concentration, persistence, or pace. (Tr. 213). Dr. Melvin believed that Plaintiff had a moderate degree of difficulty in maintaining social functioning and had experienced no episodes of decompensation, each of extended duration. *Id*. Dr. Melvin explained in part:

> Claimant's statements are only partially consistent with the medical

> evidence. He reported during evaluation that he only has a 7th grade education. On application claimant reported he went to the 11th grade. Also claimant's symptoms were different on ADL [activities of daily living] form than he reported during the interview. He stated that he had a very poor appetite and slept all day long. The opposite was reported during the interview. Claimant currently lives with his wife and teenage son. Claimant is able to perform light household chores. He prepares food throughout the day. He is able to go [to] the store but goes infrequently. He reported he is able to handle his own finances. He reports that he is able to get along well with family and friends, but gets easily upset by others....

(Tr. 201).

In June 2007 Plaitniff began receiving mental health treatment at Daymont Behavioral Health. (Tr. 339-50). He reported that he felt depressed and felt nervous around others. He felt he was starting to get in a "dark place," and he sought counseling services to improve his coping skills. (Tr. 346).

On intake, his thoughts were logical but circumstantial. His mood was depressed and anxious. His affect was flat. He was diagnosed with an adjustment disorder with mixed anxiety and depressed mood. (Tr. 348).

Plaintiff began regular counseling with Debra Savage, LSW.[5] He continued to have consistent problems with irritability and anger that affected his relationship with his family. (Tr. 333-38). He was seen by a psychiatrist at Daymont and prescribed anti-depressant medication. (Tr. 332).

In February 2008 Ms. Savage prepared a report concerning Plaintiff's ability to perform mentally in the work place. (Tr. 278). Ms. Savage indicated that Plaintiff would

---

[5] Licensed Social Worker.

7

be markedly limited in his ability to: sustain attention and concentration; perform activities within a schedule; complete a normal workday or workweek; interact appropriately with the general public; respond appropriately to supervisors; interact with peers without distraction; and behave in a socially appropriate manner. (Tr. 278).

Ms. Savage also noted that Plaintiff was moderately limited in his ability to handle instructions, maintain a normal work routine without supervision and moderately limited in his ability make simple related work decisions. Ms. Savage concluded that Plaintiff would not be employable for 12 months or more. (Tr. 278).

Ms. Savage noted that Plaintiff was 55 years old at that time and that he was being treated for "major depression due to severe medical problems." (Tr. 278). She noted that Plaintiff was unable at times to ambulate without assistance, that he has "severe problems with anger and poor impulse control that at times leads to homicidal thoughts and acts of violence...." *Id*.

### III. Administrative Review

#### A. "Disability" Defined and the Sequential Evaluation

The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that

8

is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a

disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary

of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v.

Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a

five-Step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).

Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v.

Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers

five questions:

   1. Has the claimant engaged in substantial gainful activity?

   2. Does the claimant suffer from one or more severe impairments?

   3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments[6] (the Listings), 20 C.F.R. Subpart P, Appendix 1?

   4. Considering the claimant's residual functional capacity,[7] can the claimant perform his or her past relevant work?

   5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available

---

[6] Social Security Regulations contain a Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  If a person's impairment meets or equals the criteria of a Listing, the person is under a "disability" as defined by the Social Security Act.  *See* 20 C.F.R. §404.1520(a)(4)(iii).

[7] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §404.1545(a); *see Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

in the national economy?

See 20 C.F.R. §404.1520(a)(4); see also Colvin, 475 F.3d at 730; Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001).

### B. ALJ Armstead's Decision

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 17, 2005, his alleged disability onset date. (Tr. 20).

At Step 2 the ALJ concluded that Plaintiff had the following severe impairments: "chronic obstructive pulmonary disease; gout; hypertension; hepatitis C and HIV, boh asymptomatic; depressive disorder NOS [not otherwise specified]; personality disorder; and a history of alcohol abuse." (Tr. 20).

The ALJ determined at Step 3 that Plaintiff does not have an impairment or combination of impairments that met or equaled the level of severity an impairment in the Listings. (Tr. 20).

At Step 4 the ALJ found that Plaintiff had the residual functional capacity to perform medium work with certain limitations. The ALJ explained:

> Giving the claimant the full benefit of doubt with regard to his allegations and subjective complaints, it is found that he is limited to simple repetitive tasks and requires the following nonexertional restrictions: no use of foot pedals, leg controls, or similar lower extremity controls; no exposure to concentrated extremes of heat, cold, generally noxious fumes, gases, poor ventilation, or dust; occasional superficial, nonintense, casual contact with co-workers, supervisors, and the public; occasional work setting and routine changes; and lower pressure for production and pace, with one being the least pressure and ten being the highest, the claimant would be limited to no

more than level five.

(Tr. 22-23).

As to Plaintiff's credibility, the ALJ characterized him as "a dubious historian." (Tr. 25). The ALJ ultimately concluded that Plaintiff's "allegations of total disability are not supported by substantial objective evidence or clinical findings. As such, they are found to be less than credible." (Tr. 26).

The ALJ also concluded at Step 4 that Plaintiff had been capable of performing his past relevant work as a dishwasher and as a laundry worker. (Tr. 26). This could have ended the ALJ's sequential evaluation at Step 4 with a non-disabilty finding. *See* 20 C.F.R. §§404.1520(a)(4)(iii) ("If you can still do your past relevant work we will find that you are not disabled."). However, the ALJ continued his evaluation, concluding at Step 5 that Plaintiff could perform a significant number of medium jobs existing in the region such as dry cleaner helper, industrial cleaner, and industrial sweeper. (Tr. 26). The ALJ based his conclusion at Step 5 on the opinions provided by a vocational expert. *Id*.

The ALJ's sequential review led him to ultimately find that Plaintiff was not under a disability and that he was therefore not eligible to receive DIB or SSI.

**IV.    Judicial Review**

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir.

2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r. of Social Security*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V.   Discussion

   A.   Credibility

Plaintiff contends that the ALJ made inconsistent findings by stating that he was "[g]iving the claimant the full benefit of doubt with regard to his allegations and subjective complaints...," yet setting Plaintiff's residual functional capacity at a level higher – i.e., finding Plaintiff more able to do work – than his testimony established. Plaintiff points out, "[he] testified that he could only walk a few blocks at a time, stand for 20-25 minutes and lift about a gallon of milk. Tr. 672, 674. These statement are inconsistent with the ALJ's finding." (Doc. #8 at 50). Plaintiff also argues that the evidence of record supports the existence of his limitations, as he described them in his testimony, including those caused by arthritic gout. And Plaintiff concludes that his credible testimony is inconsistent with the ability to perform more than sedentary work.

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981). But an ALJ cannot reject a claimant's testimony based solely on the ALJ's "'intangible or intuitive notion about an individual's credibility.' Rather, such determinations must find support in the record." *Rogers*, 486 F.3d at 247 (quoting, in part, Social Security Ruling 96-7p, 1996 WL 374186 at * 4).

> Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. Consistency of the various pieces of information contained in the record should be scrutinized. Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.

*Rogers*, 486 F.3d at 247-48.  An ALJ's credibility findings are "accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters*, 127 F.3d at 531.  "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence."  *Id*.

In Plaintiff's case the ALJ correctly described the legal standards applicable to resolving credibility issues.  *See* Tr. 24; *see also* 20 C.F.R. §404.1529; *Rogers*, 486 F.3d at 247-48.  Substantial evidence supports the ALJ's application of those legal standards.  The ALJ considered the objective medical evidence that related to Plaintiff's problems, including his gout.  Diagnostic testing did not support Plaintiff's allegations.  Right foot x-rays showed arthritic changes in the MP joint consistent with gout, right ankle x-rays showed mild degenerative changes, and right hand x-rays showed some degenerative changes.  (Tr. 168-69, 458).  Lumbar spine x-rays showed only mild scoliosis, good alignment, and mild sclerosis at L5-S1.  (Tr. 277).

In addition, the clinical findings in the record did not support Plaintiff's testimony.

14

Plaintiff walked with a normal gait without ambulatory aids, he got on and off the examining table without difficulty, he could squat and arise from a squat, and his toe and heel gait was normal. (Tr. 447, 457). Motion of his extremities and spine ranged from normal to reduced and bilateral straight leg raising was normal. (Tr. 367, 369, 457, 461-63). Reflexes and sensation in his extremities were normal, strength in the extremities was at most times normal, and there was no atrophy in the lower extremities. (Tr. 367, 458, 460, 472, 510, 539, 545). No neurological deficits and no evidence of any atrophy detract from any claim of disabling pain. Based on all this evidence, the ALJ reasonably determined that Plaintiff's allegations of total disability were less than credible. (Tr. 26).

In sum: the above objective diagnostic and clinical medical evidence constitutes substantial evidence supporting the ALJ's credibility findings.

In assessing Plaintiff's credibility, the ALJ also considered Plaintiff's activities (Tr. 25). The record revealed Plaintiff used the bus to get around, and he socialized with family and friends. (Tr. 191-92). He cooked, did the dishes, did the laundry, vacuumed, cleaned, mopped, swept, and straightened up. (Tr. 192). He cleaned the house daily and it was spotless. (Tr. 340). In January 2006 Plaintiff was in North Carolina and Delaware. (Tr. 253). Plaintiff's activities belie his allegations of disabling pain and symptoms.

In assessing Plaintiff's credibility, the ALJ also found that Plaintiff was noncompliant with treatment. (Tr. 25). Plaintiff was instructed to quit drinking because that could aggravate gout, but he continued to drink. (Tr. 25, 192, 250). For a period of

time, Plaintiff had not been seen or treated and he was not taking medications. (Tr. 253). In fact, for some time, Plaintiff was not taking medications for HIV or Hepatitis C. (Tr. 250, 253).

Substantial evidence supports the ALJ's finding that Plaintiff was "dubious historian." (Tr. 25). Plaintiff testified at the hearing that he completed the 11th grade in school, but he told Dr. Flexman and Ms. Savage that he completed the 7th grade in school. (Tr. 191, 341, 618). In addition, Dr. Flexman found Plaintiff was evasive during the evaluation and his affect was embellished. (Tr. 192).

The ALJ's credibility conclusions remain valid even though, as Plaintiff points out, the ALJ wrote that he was "[g]iving the claimant the full benefit of doubt with regard to his allegations and subjective complaints...." (Tr. 22). Upon reading the ALJ's decision as a whole, his statement that he was "[g]iving the claimant the full benefit of doubt..." did not mean that he found Plaintiff's testimony to be fully credible. This is so because if the ALJ had found Plaintiff's testimony fully credible, there would have been no need for him to evaluate Plaintiff's credibility. Because the ALJ conducted a full inquiry into Plaintiff's credibility, because he did so by applying the correct legal criteria, and because substantial evidence supported the ALJ's credibility findings, no reversible error arises from his statement that he was "[g]iving the claimant the full benefit of doubt...."

Accordingly, Plaintiff's challenges to the ALJ's credibility assessment lack merit.

16

### B. Treating Therapist Ms. Savage

Plaintiff points out that his treating mental health therapist Ms. Savage completed a report stating her opinion that Plaintiff was markedly restricted in his ability to: sustain attention and concentration; perform activities within a schedule, complete a normal workday or workweek, interact appropriately with the general public, respond appropriately to supervisors, interact with peers without distraction, and behave in a socially appropriate manner. *Id*. Ms. Savage also noted that Plaintiff was moderately limited in his ability to handle instructions, maintain a normal work routine without supervision, and make simple related work decisions. And Ms. Savage concluded that Plaintiff would be unemployable for 12 months or more. *Id*. Plaintiff argues that the ALJ erred by not describing these limitations and by rejecting Ms. Savage's opinions on the ground that she was not an acceptable medical source.

Under the treating physician rule, Social Security Regulations and case law require ALJs to apply controlling weight to a treating medical source's opinion when it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *See* 20 C.F.R. §404.1527(d)(2); *see also Rabbers*, 582 F.3d at 660; *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544. If a treating medical source's opinion is not entitled to controlling weight, it must be weighed under "a host of other factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242.

The ALJ's decision in Plaintiff's case reveals that he did not err in declining to place controlling weight on Ms. Savage's opinions. The ALJ properly characterized Ms. Savage, a social worker, an not an acceptable medical source under the Regulations. (Tr. 23-24). As set forth in 20 C.F.R. §404.1513(a),(d) a social worker is not an acceptable medical source. Because only an acceptable medical source can be considered a "treating source" whose medical opinion may be entitled to controlling weight, *see* 20 C.F.R. § 404.1527(a)(2), the ALJ did not err by declining to apply controlling weight to Ms. Savage's opinions.

In addition, Social Security Ruling 06-03p, 2006 WL 2329939 provides guidance on how ALJs can consider opinions from those who are not acceptable sources. Ruling 06-03p explains in part:

> Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity....

Ruling 06-03p, 2006 WL 2329939 at *4. The ALJ analyzed Ms. Savage's opinion in accordance with this Ruling. (Tr. 23-24). The ALJ reasonably afforded Ms. Savage's opinions little weight because they were not supported by the medical record and were inconsistent with other medical evidence. (Tr. 24). The record revealed that Plaintiff had never been hospitalized because of his mental condition. (Tr. 24). In addition, Plaintiff

was cooperative, pleasant and friendly, he used clear speech, and he had good reasoning and logical thought processes. (Tr. 192-93, 305-38, 440). Plaintiff's mood varied from depressed to not depressed, his affect ranged from full to flat, and his judgment was fair to impaired. (Tr. 192, 305-38, 344, 367, 440, 472). He was always alert and oriented, his memory was good or impaired, he had no delusions or suicidal ideations, he complained of hallucinations one time, and even though Ms. Savage noted on a form Plaintiff complained of homicidal thoughts, *see* Tr. 279, her treatment notes did not reflect this concern or observation. (Tr. 192, 278-79, 310, 325, 330-32, 336, 367, 440, 447, 472).

Accordingly, Plaintiff's challenges to the ALJ's consideration of Ms. Savage's opinions lack merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final non-disability decision be affirmed; and
2. The case be terminated on the docket.


January 28, 2011

                  s/ Sharon L. Ovington
                   Sharon L. Ovington
                 United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).